DREVET HUNT (Bar No. 240487)
Email: dhunt@cacoastkeeper.org
CALIFORNIA COASTKEEPER ALLIANCE
1100 11th Street, 3rd Floor
Sacramento, California 95814
Telephone: (415) 606-0864

*Attorney for Plaintiffs*
LOS ANGELES WATERKEEPER

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit corporation<br><br>                                      Plaintiff,<br><br>        vs.<br><br>FLOWSERVE US, INC., a Delaware Corporation,<br><br><br>                              Defendant. | Case No.: 2:21-cv-08950-AFM<br><br>**\*\*CORRECTED**<br>**[~~PROPOSED~~] CONSENT DECREE**<br><br>**(\*\*CORRECTED TO INCLUDE THE SIGNATURES OF ALL PARTIES)** |

## CONSENT DECREE

**WHEREAS,** Los Angeles Waterkeeper ("LA Waterkeeper" or "Plaintiff") is a 501(c)(3) non-profit public benefit water advocacy corporation organized under the laws of the State of California, with its main office in Santa Monica, California;

**WHEREAS**, LA Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS**, FLOWSERVE US, INC. ("Flowserve" or "Defendant") owns and operates a facility at 2300 E. Vernon Ave., Vernon, California 92590 ("Facility");

**WHEREAS**, activities conducted at the facility include metal fabrication and manufacturing associated with the manufacturing of pumps and pumping equipment;

**WHEREAS**, storm water discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 97-03-DWQ, and as amended by Water Quality Orders Nos. 2015-0057-DWQ and 2015-0122-DWQ ("Industrial General Permit" or "Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the Industrial General Permit requires all permittees, including Defendant, to comply with, inter alia, the following mandates: (1) develop and implement a storm water pollution prevention plan ("SWPPP") and a storm water monitoring implementation plan ("MIP"), (2) control pollutant discharges using, as applicable, best available technology economically achievable ("BAT") or best conventional pollutant control technology ("BCT") to prevent or reduce pollutants through the development and application of Best Management Practices ("BMPs"), which must be included and timely updated in the SWPPP, (3) reduce and eliminate discharges necessary to comply with any and all applicable Water Quality Standards

("WQS"), and (4) implement a monitoring and reporting program designed to assess compliance with the Industrial General Permit for subject industrial activities;

**WHEREAS**, on January 31, 2021, Plaintiff issued a notice of intent to file suit ("60-Day Notice") to Defendant, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Director Los Angeles Regional Water Quality Control Board ("Regional Board"), and the Regional Administrator of EPA Region IX, alleging violations of the Clean Water Act and Industrial General Permit;

**WHEREAS**, on November 15, 2021, LA Waterkeeper filed a complaint against Flowserve in the Central District of California, Civil Case No. 21-cv-08950 ("Complaint");

**WHEREAS**, Plaintiff's Complaint alleges violations of the Industrial General Permit and CWA for Defendant's discharges of pollutants into surface waters, including the Los Angeles River ("Receiving Waters");

**WHEREAS,** Defendant denies all allegations in the 60-Day Notice and the Complaint and reserves all rights and defenses with respect to such allegations and claims;

**WHEREAS**, Plaintiff and Defendant (collectively "Settling Parties" or "Parties," individually a "Party") without either adjudication of Plaintiff's claims or any admission by Defendant of any alleged violation or other wrongdoing, believe it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice Letter and Complaint without further proceedings;

**WHEREAS**, all actions taken by the Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local rules and regulations.

[PROPOSED] CONSENT DECREE

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1. The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A);

2. The Parties hereby consent to Magistrate Judge jurisdiction in the United States District Court Central District of California;

3. Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District;

4. The Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365;

5. LA Waterkeeper has standing to bring this action;

6. The Court shall retain jurisdiction over this action for purposes of interpreting, modifying, or enforcing the terms of this Consent Decree, or as long thereafter as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the two (2) year term of this Consent Decree.

## I. OBJECTIVES

7. It is the express purpose of the Setting Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by LA Waterkeeper in its 60-Day Notice and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the Industrial General Permit, and compliance with all applicable sections of the CWA.

8. In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree, terms and conditions of the

General Permit, and all applicable sections of the CWA for subject industrial activities at the Facility.

II. **AGENCY REVIEW AND CONSENT DECREE TERM**

    A. **AGENCY REVIEW OF CONSENT DECREE**

        9.    <u>Agency Review</u>. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the EPA (the "Federal Agencies"), within three (3) business days of the final signature of the Parties, for agency review consistent with <u>40 C.F.R. § 135.5</u>. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts. In the event that the Federal Agencies object to entry of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies.

        10.    <u>Court Notice</u>. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by <u>40 C.F.R. § 135.5</u>, in order coordinate the Court's calendar with the 45-day review period.

        11.    <u>Entry of Consent Decree</u>. Following expiration of the Federal Agencies' 45-day review period, Plaintiff shall submit the Consent Decree to the Court for entry.

    B. **EFFECTIVE DATE AND TERM OF CONSENT DECREE**

        12.    <u>Effective Date</u>. The Effective Date of this Consent Decree shall be the date of entry by the Court.

        13.    <u>Term & Termination</u>. This Consent Decree shall terminate two (2) years from the Effective Date unless one of the Settling Parties has invoked Dispute Resolution in accordance with Section IV of this Consent Decree, in which case the Consent Decree will terminate within the earlier of fifteen (15) days of notice by the Settling Party that invoked Dispute Resolution that the dispute has been fully resolved or an order of the Court resolving the dispute and terminating the Consent Decree.

III. **COMMITMENTS OF THE SETTLING PARTIES**

    A. **STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES**

14. <u>Current and Additional Best Management Practices</u>: In addition to maintaining the current Best Management Practices ("BMPs") described in the Facility's Storm Water Pollution Plan ("SWPPP"), Defendant shall (1) develop and implement BMPs identified herein, and (2) develop and implement additional BMPs necessary to comply with the provisions of this Consent Decree and the Industrial General Permit, including but not limited to those that achieve BAT and BCT to prevent or reduce contamination in storm water discharges from subject industrial activities, and ensure that industrial storm water discharges from such activities and authorized NSWDs do not cause or contribute to an exceedance of any applicable water quality standards in any affected receiving water..

15. <u>Structural and Non-Structural BMPs for the Facility</u>: Within forty-five (45) days of the Effective Date of this Consent Decree, Defendant shall develop and implement the following BMPs at the Facility:

    a. Conduct weekly sweeping of all impervious surfaces with an efficient street sweeper on the South Coast AQMD-approved list of PM10-efficient street sweepers or its equivalent;

    b. In areas inaccessible with a sweeper, hand sweep weekly in dry season and daily in wet season (but not during precipitation events);

    c. Institute a formal pre-rain protocol involving inspection of filters and temporary coverage (e.g., tarping) of all material stored outside;

    d. Upgrade existing overhead structures or expand overhead structures, as necessary, consistent with the definition of "Storm-Resistant Shelters" from the Industrial General Permit, to minimize the potential for stormwater to encounter the material below the structures or for contents to become windborne. Consolidate material storage and maintenance operations within these structures;

e.  Clean leaks and accumulation of debris from vents, refuse areas, sources of condensate, and any other equipment kept out of doors and implement protocol to detect and address such leaks and accumulation in the future;

f.  Remove any inutile metals material and consolidate parts to the extent practicable;

g.  Inspect hazardous material and waste storage areas daily for proper implementation and maintenance of control measures and containment integrity; and

h.  Train employees on appropriate hazardous materials use and hazardous waste control and disposal procedures at the initial time of employment and then at least annually after that.

i.  Evaluate current forklift tires and, to the extent that forklifts are not already equipped with zinc-free tires or other durable alternatives that minimize the release of dust, replace tires with zinc-free tires or other durable alternatives that minimize the release of dust;

j.  Perform equipment maintenance activities only in designated maintenance areas

k.  When emergency maintenance activities must be performed outdoors, lay down absorbent before conducting any operational activity and act immediately to contain, capture and clean up any spill or leak of fluids to the ground;

l.  Stock and maintain spill clean-up supplies at all fluid storage, hydraulic press, and maintenance areas;

m.  Do not leave drip pans or open waste containers unattended. Transfer all wastes to proper containers as soon as practical, but, at the minimum, at the end of the workday;

n.  Inspect operation work areas daily to ensure adequate implementation and maintenance of operational procedures and control measures; and

o.  Train all staff on proper operating procedures and control measures at initial training (or arrival) at the Facility, then at least annually.

16.  Defendant shall implement an intensive monitoring program that serves to inform management responses, including structural and non-structural BMPs, that includes:

a.  Sample collection at existing designated sampling locations during the 2021-2022 wet weather season.

b.  Assessment of data collected no later than January 31, 2022.

c.  In the event the data assessment identifies exceedances of the levels set forth in Table 1, below, at the designated sampling locations, intensive monitoring should occur at upstream locations, such as downspouts, scrap storage areas, refuse storage areas, and maintenance buildings to identify sources of pollutants.

d.  Develop and implement BMPs to address identified sources of pollutants as soon as possible and, in no event, later than June 30, 2022.

17.  <u>Sampling Parameters</u>: All samples collected pursuant to this Consent Decree shall be analyzed for the parameters listed in Table 1.

18.  <u>Laboratory and Holding Time</u>. Except for pH samples, delivery of all samples to a California state certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a calibrated portable instrument for pH in accordance with the manufacturer's instructions.

19.  <u>Detection Limit</u>: Defendant shall request that the laboratory use analytical methods adequate to detect the individual contaminants at or below the values specified in the Industrial General Permit and Table 1 below.

20.  <u>Reporting</u>: Defendant shall provide complete laboratory results of all samples collected at the Facility to SMARTS in accordance with the Industrial

General Permit, and shall provide copies to LA Waterkeeper within five (5) days of receiving a written request for the results.

### B. REDUCTION OF POLLUTANTS IN DISCHARGES

21.    Table 1 Numeric Limits: Defendant shall develop and implement BMPs to reduce pollutants in storm water at the Facility to levels below those in Table 1. As of the Effective Date, and for the remainder of the term of this Consent Decree, if storm water samples demonstrate an Exceedance as defined paragraph 22 in a single reporting year, Defendant shall comply with the action plan requirement set forth below.

TABLE 1

| Analytes | Limits | Source of Limit |
|---|---|---|
| Total Suspended Solids (TSS) | 100 mg/L | EPA Benchmark |
| Total Iron (Fe) | 1 mg/L | EPA Benchmark |
| Oil & Grease (O&G) | 15 mg/L | EPA Benchmark |
| Total Zinc (Zn) | 0.159 mg/L | TMDL/NEL |

22.    Beginning with the 2021-2022 reporting year, in any reporting year under the term of this Consent Decree an "Exceedance" occurs if 1) the annual average of all storm water analytical results for TSS, iron, or O&G exceeds any of the applicable numeric limits as set forth in Table 1; 2) any two storm water samples contain a single pollutant at a concentration that exceeds an Instantaneous NALs as set forth in Table 2 of the Industrial General Permit; or 3) any two storm water samples contain Total Zinc at a concentration that exceeds any of the applicable numeric limits set forth in Table 1 above.

23.    Action Plan for Exceedances: If storm water samples demonstrate an Exceedance, Defendant shall prepare and submit to LA Waterkeeper a plan for reducing and/or eliminating the discharge of pollutants ("Action Plan") for the Facility.

24.     If an Action Plan is required following a Reporting Year, it shall be submitted by June 30, at the conclusion of any given Reporting Year that demonstrated an Exceedance.

a. Action Plan Requirements. Each Action Plan submitted shall include at a minimum: (1) the identification of the contaminant(s) discharged causing the Exceedance; (2) an assessment of the source of each contaminant Exceedance; (3) the identification of additional BMPs that will be implemented to achieve compliance with the applicable limits or action levels, as well as the design plans and calculations of these additional BMPs as applicable; and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no case later than October 1 of the upcoming Reporting Year. Defendant shall notify LA Waterkeeper in writing when an Action Plan has been implemented.

i. Any Action Plan required under this Consent Decree following the 2022-2023 reporting year, shall require, at a minimum, one or more of the following BMPs:

(a)     Capture and infiltration of storm water consistent with Volume-Based BMP standards from the Industrial General Permit (Section X.H.6.a);

(b)     Capture and treatment of storm water, consistent with the Flow-Based BMP standards from the Industrial General Permit (Section X.H.6.b);

b. Action Plan Review: LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's Action Plan to provide Defendant with comments. Within fourteen (14) days of receiving LA Waterkeeper's proposed revisions to an Action Plan, Defendant shall consider each of LA Waterkeeper's recommended revisions and accept them or justify in

writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

c. <u>Action Plan Payments</u>: Defendant shall pay Two Thousand Dollars ($2,500.00) each time an Action Plan is submitted to LA Waterkeeper. Payments shall be made payable to: "Los Angeles Waterkeeper" and delivered by overnight carrier to Los Angeles Waterkeeper, Attn: Kelly Clark, 120 Broadway, Suite 105, Santa Monica, CA 90401. Failure to submit a payment as required under this paragraph will constitute a breach of the Consent Decree.

**C. VISUAL OBSERVATIONS**

25. <u>Storm Water Discharge Observations</u>: During the term of this Consent Decree, Defendant shall conduct visual observations during the Facility's operating hours during every QSE rain event that results in storm water discharges from the Facility.

26. <u>Visual Observations Records</u>: Defendant shall maintain observation records and photographs to document compliance with paragraph 25 and shall provide LA Waterkeeper with a copy of those records within fourteen (14) days of receipt of a written request from LA Waterkeeper for those records.

27. <u>Employee Training Program</u>: Within forty-five days of the Effective Date, Defendant shall develop and implement an employee training program that meets the following requirements and ensures (1) that there is a sufficient number of employees at the Facility designated to achieve compliance with the Industrial General Permit and this Consent Decree ("Designated Employees"), and (2) that these Designated Employees are properly trained to perform the activities required by the Industrial General Permit and this Consent Decree ("Training Program"):

a. <u>Language</u>. The training and training materials shall be available and offered in the language(s) in which relevant employees are fluent. If necessary, Defendant shall provide a translator or translators at all trainings where such translation is likely to improve staff comprehension of the Training Program and improve compliance with this Consent Decree and the Industrial General Permit.

b. Training shall be provided by a Qualified Industrial Storm Water Practitioner ("QISP"), as defined in Section IX.A of the 2015 Permit) familiar with the requirements of this Consent Decree and the Industrial General Permit, and shall be repeated as necessary to ensure that all relevant employees are familiar with the requirements of this Consent Decree, the Industrial General Permit, and the Facility's SWPPP. All relevant new staff shall receive this training before assuming responsibilities for implementing the SWPPP.

c. <u>Sampling Training</u>: Defendant shall designate an adequate number of employees or maintain contracts with qualified consultants to collect storm water samples as required by this Consent Decree, including training to ensure samples are properly collected, stored, and submitted to a certified laboratory.

d. <u>Visual Observation Training</u>: Defendant shall provide training on how and when to properly conduct visual observations to Designated Employees;

e. <u>Employees</u>: All Designated Employees at the Facility shall participate in the Training Program annually. New Designated Employees shall participate in the Training Program within thirty (30) days of their hiring date;

f. The Defendant shall maintain training records to document compliance with this paragraph and shall provide LA Waterkeeper with a copy of these records within fourteen (14) days of receipt of a written request.

g.  <u>Identification of Storm Water Pollution Prevention Team and Training Program Updates into SWPPP</u>: Within sixty (60) days of the Effective Date of this Consent Decree, Defendant shall update the SWPPP to identify the positions and persons responsible for carrying out storm water management, monitoring, sampling and SWPPP implementation.

28.  <u>SWPPP and Monitoring Implementation Plan ("MIP") Revisions and Update</u>: Within sixty (60) days of the Effective Date of this Consent Decree, Defendant shall amend the Facility's SWPPP and MIP to incorporate the requirements in this Consent Decree.  Defendant agrees to submit the updated SWPPP and MIP to LA Waterkeeper upon completion for review and comment.

a.  <u>Review of SWPPP and/or MIP</u>: LA Waterkeeper shall have thirty (30) days from receipt of the amended SWPPP and/or MIP to propose any changes. Within thirty (30) days of receiving LA Waterkeeper's comments and proposed changes to the SWPPP, Defendant shall consider each of the comments and proposed changes and either accept them or justify in writing why any proposed change is not incorporated;

b.  Defendant shall revise the SWPPP and MIP if there are any material changes in the Facility's operations, including but not limited to changes in storm water discharge points or BMPs within thirty (30) days of the changes, which will be subject to LA Waterkeeper's review and comment as provided in paragraph 28(a) above.

c.  The Parties agree to work in good faith to resolve any disputes with respect to the SWPPP or MIP, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below.

**D.  COMPLIANCE MONITORING AND REPORTING**

29.  In light of limitations on-site inspections described in paragraph 30 below, within one hundred and twenty (120) days of the Effective Date, Defendant

shall provide documentation of implementation of the BMPs set forth in paragraph 15 and, specifically, to satisfy (if necessary) the requirements of paragraph 15(a) and 15(i), in particular. Documentation required by this paragraph shall include photographs that depict all physical changes to the Facility resulting from implementation of BMPs in paragraph 15.

30.     Because portions of the Facility's operations are classified and conducted in compliance with requirements imposed by the U.S. Department of Defense, among other governmental agencies, and subject to the possibility of an inspection in the event of a dispute as described below, during the term of this Consent Decree LA Waterkeeper may conduct only one site inspection ("Site Inspection") of the Facility for the purpose of ensuring compliance with this Consent Decree. In the event of a dispute regarding Defendant's compliance with this Consent Decree and provided an additional Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding one additional Site Inspection for the term of the Consent Decree at Plaintiff's request. Plaintiff shall not unreasonably request, and Defendant shall not unreasonably deny, one additional Site Inspection. Any Site Inspection shall occur during normal business hours, and LA Waterkeeper will provide Defendant with as much notice as possible—but at least forty-eight (48) hours notice prior to a Site Inspection planned to occur during wet weather, and seventy-two (72) hours notice prior to a Site Inspection planned to occur during dry weather. For any Site Inspection requested to occur in wet weather, Plaintiff shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather. Notice will be provided by telephone and electronic mail to the individual(s) designated below at paragraph 59. During the Wet Weather inspection, provided discharges are occurring, Plaintiff may request that Defendant collect a sample of industrial storm water discharge from the Facility's designated industrial discharge point(s) referenced in its SWPPP. Defendant shall collect the sample and provide a split sample to LA

[PROPOSED] CONSENT DECREE

Waterkeeper. LA Waterkeeper's representative(s) may observe the split sample(s) being collected by Defendant's representative. In the event that LA Waterkeeper receives a split sample from Defendant for analysis, LA Waterkeeper must comply with the provisions set forth in paragraphs 17 through 19 above.

31.    <u>Document Provision</u>. During the term of this Consent Decree, Defendant shall notify and submit documents to LA Waterkeeper as follows:

  a. Defendant shall copy LA Waterkeeper on all compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents related to storm water quality for the subject industrial activity areas at the Facility that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality. Alternatively, to the extent that Defendant submit such documents to the Regional Board or State Board via SMARTS, Defendant may satisfy this requirement by providing notice to LA Waterkeeper via email that said documents have been uploaded to SMARTS within seven (7) calendar days of uploading said documents.

  b. Any compliance document, inspection report, written communication and/or correspondence, or any document related to storm water quality at the Facility received by Defendant from the Regional Board, the State Board, and/or any state or local agency, county, municipality shall be sent to LA Waterkeeper within ten (10) business days of receipt by Defendant. Defendant shall mail paper copies or email electronic copies of documents to LA Waterkeeper at the relevant notice address contained below.

32.    <u>Compliance Monitoring</u>. Defendant agrees to partially defray costs associated with Plaintiff's monitoring of Defendant's compliance with this Consent Decree by paying Six Thousand dollars ($6,000.00) within sixty (60) days of the Effective Date of the Consent Decree. This payment as well as the payment required by paragraph 34 below shall be made in a single check payable to: "California

Coastkeeper Alliance" and delivered by overnight carrier to California Coastkeeper Alliance, Attn: Sean Bothwell, 1100 11th Street, 3rd Floor, Sacramento, CA 95814.

### E. ENVIRONMENTAL MITIGATION, LITIGATION FEES AND COSTS, STIPULATED PENALTIES, AND INTEREST

33.  <u>Environmental Mitigation Project</u>: To remediate the alleged environmental harms resulting from allegations in the Complaint, Defendant agrees to make a total payment of Twenty-Eight Thousand dollars ($28,000.00) to the Rose Foundation for Communities and the Environment to be used to support environmental projects related to water quality in the Southern California Bight, and designed to analyze, reduce, prevent, and/or otherwise mitigate the ecological or public health effects of industrial stormwater and/or non-stormwater discharges. Such payment shall be made by check within sixty (60) days of the Effective Date, payable to Rose Foundation for Communities and the Environment and sent via overnight mail to: Rose Foundation, 201 4th Street, Ste. 102, Oakland, California, 94607. Defendant shall provide LA Waterkeeper with a copy of such payment.

34.  <u>LA Waterkeeper's Fees and Costs</u>: Defendant agrees to pay a total of Fifty-One Thousand Dollars ($51,000.00) within sixty (60) days of the Effective Date to partially reimburse Plaintiff for their investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit and negotiating a resolution of this matter. Payment shall be made as described in paragraph 32.

35.  Defendant shall make a remediation payment of Five Hundred Dollars ($500.00) for each missed deadline included in this Consent Decree that is not excused by LA Waterkeeper in writing to an extension of that particular deadline. LA Waterkeeper shall not unreasonably withhold providing Defendant with an extension of a deadline that is reasonably requested by Defendant. Payments for missed deadlines shall be made to "Los Angeles Waterkeeper" and delivered by overnight carrier to Los Angeles Waterkeeper, Attn: Kelly Clark, 120 Broadway, Suite 105, Santa Monica, CA 90401. Defendant agrees to make the stipulated payment within

thirty (30) days of a missed deadline. Defendant shall provide LA Waterkeeper with a copy of each such payment at the time it is made.

36.    <u>Interest on Late Payments</u>: Defendant shall pay interest on any payments, fees, or costs owed to LA Waterkeeper under this Consent Decree that LA Waterkeeper has not received by the due date. The interest shall accrue starting the first day after the payment is due and shall be computed at a rate of 1% per month (12% per year). Interest on late payments shall be made payable to "California Coastkeeper Alliance" and delivered by overnight carrier to California Coastkeeper Alliance, Attn: Sean Bothwell, 1100 11th Street, 3rd Floor, Sacramento, CA 95814.

## IV. **DISPUTE RESOLUTION**

37.    This Court shall retain jurisdiction over this matter for the term of this Consent Decree for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

38.    <u>Meet and Confer</u>. Either party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other party in writing of the matter(s) in dispute and of the disputing party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) calendar days from the date of the notice.

39.    <u>Settlement Conference</u>. If the Parties cannot resolve the dispute within thirty (30) days of the meet and confer described in paragraph 38, the Parties agree to request a settlement meeting or conference before the Magistrate Judge assigned to this action.

40.    <u>Motion</u>. In the event that the Parties cannot resolve the dispute within sixty (60) days of the initial settlement meeting or conference with the Magistrate Judge, the Parties agree that the dispute may be submitted for formal resolution by

filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion.

41.     In resolving any dispute arising from this Consent Decree before the Court, the Parties shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions.

## V. **MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE**

42.     <u>Plaintiff's Waiver and Release of Defendant</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers and directors, release Defendant, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were or could have been raised based on the facts alleged in the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

43.     <u>Defendant's Waiver and Release of Plaintiff</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers and directors, from and waives all claims related to the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

44.     Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any matter relating to Defendant's compliance at the Facility with the Industrial General Permit or the Clean Water Act occurring or arising after the Effective Date.

## VI. **MISCELLANEOUS PROVISIONS**

45.   <u>No Admission of Liability</u>. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree, the implementation of BMPs nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendant maintains and reserves all defenses they may have to any alleged violations that may be raised in the future.

46.   <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Scanned, telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

47.   <u>Authority</u>. The undersigned representatives for Plaintiff and Defendant each certify that s/he is fully authorized by the party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

48.   <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Industrial General Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

49.   <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

50.   <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

51.     <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

52.     <u>Choice of Law</u>. The laws of the United States shall govern this Consent Decree.

53.     <u>Diligence</u>: Defendant shall diligently file and pursue all required permit applications for structural BMPs, as applicable, and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

54.     <u>Effect of Consent Decree</u>: Compliance with this Consent Decree does not mean that Defendant is complying with the Industrial General Permit, the Clean Water Act, or any other law, rule, or regulation.

55.     <u>Negotiated Settlement</u>. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

56.     <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

57.     <u>Assignment</u>. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendant shall notify Plaintiff within ten (10) days of any assignment.

58.     <u>Force Majeure</u>. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree

when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any party seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

59. <u>Correspondence</u>. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

//

//

//

//

//

//

//

//

//

//

//

If to Plaintiff:
California Coastkeeper Alliance
Drevet Hunt, Legal Director
1100 11th Street, 3rd Floor
Sacramento, CA 95814
dhunt@cacoastkeeper.org

If to Defendant:
Mahsa Soheil
Director, Global Litigation and
Environmental Law
Flowserve Corporation
5215 N. O'Connor Blvd., Suite 2300
Irving, Texas 75039
Direct: (469) 420-4072
MSoheil@flowserve.com

With copies to:

Los Angeles Waterkeeper
Kelly Clark
120 Broadway, Suite 105
Santa Monica, CA 90401
kelly@lawaterkeeper.org

With copies to:

Daryl Hernandez
Associate Principal
EnSafe
11545 W. Bernardo Court, Suite 206
San Diego, CA 92127
Cell: (858) 699-1581
Direct: (858) 217-5306
dhernandez@ensafe.com

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

60.     If for any reason the U.S. Department of Justice ("DOJ") or the District Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the DOJ or the District Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the District Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

1    The Parties hereto enter into this Consent Decree and submit it to the Court for

2    its approval and entry as a final judgment.

3

4    IN WITNESS WHEREOF, the undersigned have executed this Consent Decree

5    as of the date first set forth below.

6

7    APPROVED AS TO CONTENT

8

9    Dated: 11/15        , 2021          By: _____

10                                       Los Angeles Waterkeeper
                                         Bruce Reznik, Executive Director
11

12

13

14

15   Dated: 11/10        , 2021          _____

16                                       Flowserve US Inc.
                                         Mahsa Soheil
17

18

19

20   APPROVED AS TO FORM

21

22                                       CALIFORNIA COASTKEEPER

23

24   Dated: 4/16         , 2021          By: _____

25                                       Drevet Hunt
                                         Attorney for Plaintiff
26                                       Los Angeles Waterkeeper

27                                       PAUL HASTINGS

28

1

2  Dated: November 16, 2021          By: _____

3                                         David Walsh
                                          Attorney for Defendant
4                                         Flowserve US Inc.

5

6  **IT IS SO ORDERED.**

7  **FINAL JUDGMENT**

8

9      Upon approval and entry of this Consent Decree by the Court, this Consent

10  Decree shall constitute a final judgment between the Plaintiff and Defendant.

11

12

13  Dated:____1/24/2022_____

14

15

16                                    _____

17                                         Alexander F. MacKinnon
                                           United States Magistrate Judge
18

19

20

21

22

23

24

25

26

27

28